Earle, J.
dissenting. I am not satisfied with this conviction. It is the case of a common carrier, to whom goods have been delivered to be carried to a certain place, and who thereby acquired a special property and a legal possession. To make the taking in such case before the goods are brought to the place of delivery larceny, it *398 should be proved that the delivery was fraudulently procured, with a felonious intent to convert the property so acquired. Such I have always understood the law to be ; and such is stated by Mr. East, in his Pleas of the Crown, 2 E. P. C. 393, to be the result of all the cases. “ It is to be collected from them, says he, that if a person obtain the goods of another by lawful delivery, without fraud, although he afterwards convert them to his own use, he cannot be guilty of felony. As if a tailor have clotlr delivered to him, to make clothes with; or a carrier receive goods to carry to a certain place, <fec. But if such delivery be obtained by any falsehood, or fraud, and with an intent to steal, though under the pretence of a hiring or even a purchase, the delivery in fact by the owner will not pass the legal possession so as to save the party from the guilt of felony.” The case of Gorman, 2 N. & McC. 90, who by falsehood and fraud obtained the delivery of a horse as a loan, and immediately rode off in another direction and sold him, was one of this description, and the intention to convert, manifested by the falsehood in obtaining possession, made the taking larceny. But in the case before us, the cotton was delivered by the act of the owners to the prisoner, in the way of his ordinary employment, without any other procurement on his part; without any fallacious appearances, or other inducements held out to them to repose this confidence in him. There is nothing therefore to distinguish this case from that of every other carrier who takes goods entrusted to him, before they come to the place of delivery ; and then the larceny is complete only upon the actual taking, which dissolves the privity and constitutes the larceny. Now whether the taking by the prisoner was of such a sort at the time and place of its being committed, I will not inquire. But I conclude from the rule to which 1 have referred, that it could only be a larceny in Charleston district, where the cotton was converted. The case of four prisoners, Barnet and others, at Worcester, reported in 2 Russ, on Cr. 191, was of a similar kind, and it was held to be larceny at the place of taking. The case cited from Kelynge, 81, of the carrier who carried the packs of goods to the appointed place, and opened them and took the goods, is there put, it is true, upon the ground of an intent *399 originally not to take the goods upon the agreement, but only to steal them. The ground of decision, however, is put by all the other writers upon a different principle, that breaking the package dissolved the privity and made him a trespasser. 2 E. P. C. 696, 697. I see nothing in the proof here from which the jury could infer that the cotton was obtained with an intent to convert. If the rule adopted by the court be correct, and the larceny was committed when the cotton was received, it follows that each parcel constituted a different offence.